UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nancy W.,[1]                                                        File No. 22-cv-1758 (ECT/JFD)

         Plaintiff,

v.                                                        **OPINION AND ORDER**

Kilolo Kijakazi, Acting Commissioner of
Social Security,

         Defendant.

---

Gregg B. Nelson, Nelson Law Office, Inver Grove Heights, MN, and Wes Kappelman, Kappelman Law Firm, Ames, IA, for Plaintiff.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, and James D. Sides and Marisa Silverman, Social Security Administration, Baltimore, MD, for Defendant.

---

After the Social Security Administration denied Plaintiff Nancy W.'s application for social-security disability insurance benefits, she brought this action challenging the decision. The parties have filed cross-motions for summary judgment on the administrative record. Because substantial evidence supports the decision to deny Plaintiff's application, Plaintiff's motion is denied and Defendant's is granted.

Plaintiff Nancy W. filed an application for Disability Insurance benefits on June 27, 2019. Admin. Rec. [ECF No. 11] at 223. Plaintiff alleged that she became disabled on August 18, 2014, as a result of post-traumatic stress disorder, traumatic brain injury,

---

[1]      This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

anxiety, depression, low back pain, neck pain, and memory loss. *Id.* at 223, 264. Plaintiff later amended her disability onset date to April 1, 2017, the day before her fifty-fifth birthday.[2] *Id.* at 46.

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the

---

[2] This amendment made Plaintiff's claim an "advanced age" claim. Individuals of "advanced age" are subject to different rules, because the Social Security Administration "consider[s] that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). Specifically, as relevant here, a person of advanced age who is limited to light exertional work and unable to return to their previous employment is presumptively considered disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.00(c).

claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If she is not, the claimant must then establish that she has a severe medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

After the Social Security Administration denied Plaintiff's application for benefits initially and on reconsideration, Admin. Rec. at 79, 102, she requested a hearing before an Administrative Law Judge. Plaintiff testified at the hearing and was represented by a non-attorney representative. *Id.* at 41–63. After the hearing, the ALJ determined that Plaintiff had multiple severe impairments: lumbar degenerative disc disease, cervical spine pain, somatic symptom disorder, depressive disorder, anxiety disorder, and history of traumatic brain injury. *Id.* at 12. The ALJ found, however, that none of these impairments,

either alone or in combination, met or medically equaled any listed impairments. *Id.* at 14–16. After an extensive review of Plaintiff's medical history, the ALJ found that Plaintiff had the capacity for medium work with some restrictions, including that she could perform simple, routine tasks and have only occasional contact with coworkers and supervisors, and only incidental, passing contact with the public. *Id.* at 16–17. The ALJ determined that Plaintiff could not return to her previous employment as a social worker or in human services, but that there were jobs Plaintiff could perform in the national economy. *Id.* at 27–29. The ALJ thus concluded that Plaintiff was not disabled. *Id.* at 29. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 1–6, and this lawsuit followed. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of the Social Security Administration).

Review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold . . . is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff challenges the ALJ's decision on three grounds, arguing that the ALJ erred by: not fully developing the record as to her physical limitations, not sufficiently considering of her somatic symptom disorder when formulating Plaintiff's RFC, and evaluating the opinion of Plaintiff's treating therapist.[3]

(1) Plaintiff contends that the ALJ should have ordered additional medical examinations because the information in the medical records did not sufficiently account for Plaintiff's physical limitations. By failing to order additional examinations, Plaintiff argues, the ALJ did not develop the record as he was required to do.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). But "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1106. The ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see also Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) ("[T]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.") (quotation omitted).

---

[3] Plaintiff also contends that her claim should be remanded because the previous Acting Commissioner who appointed the Administrative Law Judge in this matter did not have the legal authority to do so. Because the Eighth Circuit Court of Appeals recently rejected this argument, *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023), it will not be addressed further.

Plaintiff cites *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), for her contention that, where medical evidence is lacking, the ALJ cannot solely rely on non-treating, non-examining physicians to formulate the RFC but must order additional examinations. And indeed, *Nevland* held that an ALJ's reliance on non-treating, non-examining physicians "does not satisfy the ALJ's duty to fully and fairly develop the record." *Id.* at 858. But the regulatory framework in effect at the time of the *Nevland* decision provided that a non-examining physician's opinions could not constitute substantial evidence to support a disability finding. *Id.* That framework has changed, and the opinions of non-treating physicians are now sufficient to support a disability finding. *See* 20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) ("Under the current regulations, however, treating physicians are not entitled to special deference.").

Even if the ALJ could not properly solely rely on the opinions of non-examining physicians, he did not do so here. Plaintiff underwent an orthopedic consultative examination in July 2020. Admin. Rec. at 1902–07. The examination found that Plaintiff had normal range of motion in her neck, shoulders, hands, wrists, elbows, hips, knees, and ankles, and only moderate range-of-motion difficulties with certain lumbar spine movements. *Id.* at 1905–07. An x-ray of Plaintiff's spine showed only arthritic changes "with no significant disc narrowing." *Id.* at 1904. Moreover, as the ALJ noted, Plaintiff's course of treatment for her back pain—her only physical limitation—was intermittent and conservative. *Id.* at 19. Plaintiff would go for months at a time without seeking treatment, and she reported that her occasional chiropractic visits helped improve her symptoms. *Id.* at 1919-20, 1926. The information in the record, including the results of the orthopedic

6

examination, provided substantial evidence to support the ALJ's RFC without any further record development.

(2) Plaintiff next contends that the ALJ erred in discounting Plaintiff's subjective complaints of pain and other physical symptoms because, as the ALJ acknowledged, she suffers from somatic symptom disorder.

> Somatic symptom disorder is . . . when a person has a significant focus on physical symptoms, such as pain, weakness or shortness of breath, to a level that results in major distress and/or problems functioning. The individual has excessive thoughts, feelings and behaviors relating to the physical symptoms. The physical symptoms may or may not be associated with a diagnosed medical condition, but the person is experiencing symptoms and believes they are sick (that is, not faking the illness).

American Psychiatric Association, *What is Somatic Symptom Disorder?* (available at https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder#) (last visited July 24, 2023).[4]

"Subjective perceptions of somatoform effects may, in fact, be debilitating even when clinical or diagnostic medical evidence does not fully support the claimed symptoms." *Nowling v. Colvin*, 813 F.3d 1110, 1114 (8th Cir. 2016). "In cases involving somatoform disorder . . . an ALJ is not free to reject subjective experiences without an express finding that the claimant's testimony is not credible." *Metz v. Shalala,* 49 F.3d 374, 377 (8th Cir. 1995). But where the ALJ makes such a finding, "the decision of an

---

[4] Somatic symptom disorder was formerly called somatoform disorder. *See* Brenda Goodman, *Somatic Symptom and Related Disorders* (available at https://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment) (last visited July 24, 2023).

ALJ who considers, but for good cause expressly discredits, a claimant's complaints [will not be disturbed] . . . even in cases involving somatoform disorder." *Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001).

The ALJ here considered and expressly discredited Plaintiff's complaints regarding her limitations, as *Gowell* requires. The ALJ noted that Plaintiff's activities were inconsistent with her claims of both disabling back pain and disabling anxiety. Plaintiff often cared for her grandchildren overnight, hosted large family gatherings for which she did most of the cooking, attended church and Bible study every week, performed household chores at her own house and at her parents' house, traveled to Arizona for several months each winter, took golf lessons, and did "field work"—including picking rock—with her husband. *See* Admin. Rec. at 22–24. Substantial evidence supports the ALJ's determination that, even considering Plaintiff's somatic symptom disorder, her subjective complaints are not fully credible.

(3) Finally, Plaintiff argues that the ALJ did not sufficiently explain why he found unpersuasive the opinions of Plaintiff's treating therapist, Barbara Nelson. Ms. Nelson completed a "Mental Impairment Questionnaire" in December 2019. Admin. Rec. at 1749–54. Ms. Nelson reported that she initially saw Plaintiff weekly, then bi-weekly, then every other month, then two to three times per year. *Id.* at 1749. By December 2019, however, their therapy sessions were even less often, whenever Plaintiff "has difficulties and cannot seem to get back on track." *Id.*

Rather than detailing her own clinical findings or examinations, Ms. Nelson answered each question regarding Plaintiff's limitations by stating, "Client reports . . . ."

8

Such reliance on subjective reports of Plaintiff's limitations, is, as the ALJ found, not a persuasive mental-health-source opinion. *Id.* at 26. Plaintiff argues that other opinions in the record noted that she has difficulty with "serial sevens"—counting by seven—and that Ms. Nelson reviewed these other opinions before filling out the questionnaire. But Plaintiff's difficulties in one area do not provide objective support for the marked to extreme impairments Ms. Nelson found. The questionnaire sought Ms. Nelson's own opinions, based on her own clinical findings and testing, of Plaintiff's ability to function. Ms. Nelson did not provide any support for her opinions other than Plaintiff's subjective reports of her limitations. The ALJ correctly determined that Ms. Nelson's opinions were not persuasive, and Plaintiff's argument to the contrary is without merit.

## ORDER

Substantial evidence in the record supports the ALJ's determination that Plaintiff is not disabled. Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment [ECF No. 13] is **DENIED**.

2. Defendant's Motion for Summary Judgment [ECF No. 19] is **GRANTED**.

3. This matter is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2023                s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court